# INDEPENDENT CONTRACTOR AGREEMENT

**THIS INDEPENDENT CONTRACTOR AGREEMENT** (this or the "Agreement") is made as of this 24th Day of December 2021 (the "Effective Date") by and between 4D Global, LLC, an Arizona limited liability company ("4D"), and Kamin Health ("Client") (collectively the "parties").

## RECITALS

A. 4D provides medical practice management services to medical billing companies, doctors, physician practices, and hospitals (the "Client").

B. Client is engaged in the medical billing services business, and specializes in revenue cycle management services.

C. Client seeks to outsource certain portions of its business activities.

D. 4D has knowledge, experience, and expertise in medical billing operations and services.

E. Client desires to engage 4D as an independent contractor to perform certain medical billing services (the "Services").

F. 4D desires to perform the Services for the benefit of Client.

## AGREEMENT

In consideration of the mutual promises described herein and for other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the parties agree as follows:

1. **Services.**

   1.1. Client is offered a five (5) day free trial period for Data Entry or Accounts Receivable Services or both. Client will not be charged for Services rendered by 4D during the first 5-day trial period. The free trial period does not shorten or extend the Effective Date of the Agreement. Paragraphs 6, 7, 8, 9, 10 apply as of the Effective Date. If client elects to continue receiving Services from 4D after the free trial period, all remaining applicable paragraphs of the Agreement will take effect, including remuneration for Services rendered beginning on the first day after the trial period, as set forth in Paragraph 5 and Exhibit B.

   1.2. Client hereby retains 4D to render the Services identified in Exhibits A and C. incorporated herein, and any other services reasonably requested by Client from time to time.

   1.3. Nothing in this Agreement will be construed to create an employer/employee relationship between Client and 4D.

1.4. The separate Service Level Agreement (SLA) is directly incorporated to this Agreement by reference herein, and by attachment to this Agreement as <u>Exhibit C</u>. The parties agree to the terms set forth in the SLA, and acknowledge that 4D's overseas subsidiary, 4D Global Medical Billing Services Pvt Ltd., will perform a portion of the obligations specified under this Agreement. The SLA provides Client with specific information concerning the roles and responsibilities of 4D's team members and their accountability to Client. The SLA provides specific and measurable descriptions of Services provided to Client. The SLA aligns Client's expectations of Services with 4D's deliverable results in performance of Services, and with ancillary Client support and quality controls. The parties agree that the SLA may be amended from time to time by mutual agreement of the parties, based upon Client's evolving objectives and desired results.

**2.** <u>**Term**</u>**.**

2.1. The term of this Agreement will begin on the Effective Date, and will continue for a period of twelve (12) months. During the first three (3) months from the Effective Date, Client may terminate this Agreement with or without cause and without prior notice.

2.2. The term of this Agreement will renew for additional periods of twelve (12) months from the Effective Date, unless terminated by either party as provided in <u>Paragraph 12</u> of this Agreement.

**3.** <u>**Performance**</u>**.**

4D agrees to the following:

3.1. Devote substantial time and effort for Client's benefit.

3.2. Perform the Services in any lawful manner, and by any lawful method chosen by 4D, provided such manner and method is not otherwise inconsistent with this Agreement.

3.3 Control the work flow and 4D's work schedule as deemed appropriate in its sole discretion. 4D is not required to perform the Services within any particular timeframe in reference to an hourly, daily, or weekly basis.

3.4. Perform the Services in a timely and professional manner, consistent with industry standards of diligence, accuracy, honesty, and integrity. In the case of verifications of benefits, timely manner will mean within one (1) hour of receipt by 4D Global.

3.5. Be available to Client's management and employees in order to coordinate and maximize the effectiveness of Client's business purposes and activities, and for the convenience of Client.

**4.** <u>**Equipment & Expenses**</u>**.**

4.1. Client will not provide 4D with equipment or work material during the course of performance.

4.2. 4D is accountable and responsible to pay for all costs, fees, expenses, and employees salaries/costs associated with performance of the Services, and to furnish for itself any tools, equipment, and other property in connection with performing the Services.

4.3     Notwithstanding the provisions of Paragraph 4.2, 4D will be entitled to reimbursement from Client for reasonable expenses incurred for the benefit of Client approved in advance. In order to collect reimbursement, 4D will retain receipts for expenses and will submit an expense report to Client.

**5.    Consideration.**

5.1.    In consideration of the performance of the Services rendered by 4D pursuant to this Agreement, Client will pay 4D, and 4D agrees to receive, a fee as set forth in Exhibit B to this Agreement, which is incorporated herein by this reference. On the anniversary of the Effective Date, and every 12 months thereafter, 4D will amend the fee schedule contained in Exhibit B, and thereby increase the fees for Services charged to Client by three percent (3.00%) or less each year.

5.2.    The parties agree that, except as set forth in this Agreement, 4D is not entitled to any other consideration or to any compensation, benefits, or reimbursement of expenses without the express written consent of Client issued in advance.

5.3.    Notwithstanding anything in the Agreement, consideration or funds paid to 4D will not be construed as a salary or wages for any purpose.

5.4.    The Parties agree that as of the Effective Date, Client has or will authorize the engagement of a particular number of full-time 4D staff members that will perform the Services for Client. 4D agrees not to increase the number of full-time staff members for Client, or charge Client for additional human resources, without the advance written consent of Client, such consent sufficient if given by email.

5.5.    Each full-time member of 4D's staff performing Services for Client will work a full month, which means devote an amount of time equivalent to 40 hours per week, for four (4) weeks. Client will not be charged for 4D staff member's time that is not devoted to Client's account. If 4D's staff member works less than the equivalent of a full month of work, Client's account balance for that month will be reduced accordingly.

5.6.    In the event of termination of the Agreement under Paragraph 12.2, 4D will be entitled to receive and be paid, even after the Termination Date, fees earned and owed prior to the Termination Date.

**6.    Independent Contractor Status.**

6.1.    4D will perform all Services as an independent contractor and not as an employee, shareholder, officer, manager, member or principal of Client. 4D is not authorized to act on behalf of Client, to make any representations, contracts, or commitments for or on behalf of Client, or otherwise bind Client, or to hold itself out as a representative or agent of Client.

6.2.    As an independent contractor relationship, the parties acknowledge and agree that the parties will not provide any employee benefits including, without limitation, health care benefits, dental benefits, any other insurance benefits or paid vacation.

6.3.    As an independent contractor relationship, the parties acknowledge and agree that they will not be remit any federal, state or FICA withholdings amounts, and that any such assessments will not be remitted on either behalf, and each party is solely responsible for payment

of all assessments or taxes, whether municipal, state, or federal assessments or taxes imposed on fees or payments received by 4D from Client for Services or otherwise.

  6.4. As an independent contractor, the parties acknowledge and agree that each party is solely responsible for its own costs and expenses, including office expenses and overhead.

  6.5. For purposes of the Agreement, 4D includes 4D's employees, agents, officers, principals, partners, members, managers, stockholders, associates, representatives, subsidiaries, independent contractors, successors, and assignees.

**7.** **Compliance & Confidentiality.**

  7.1. 4D acknowledges that in the course of performance of the Services, 4D will obtain and possess confidential information that is protected by law. Given the nature of Client's protected information, 4D, its employees and agents, agree to fully comply with 45 C.F.R. §164.502(e) and §164.504(e), governing protected health information ("PHI") the Health Insurance Portability and Accountability Act of 1996 (P.L. 104-191), 42 U.S.C. Section 1320d, *et. seq.*, and regulations promulgated thereunder, as amended from time to time (collectively referred to as "HIPAA"), and all applicable State law, in the provision of 4D's Services to Client. 4D agrees that it will not to use or disclose PHI except as permitted under this Agreement or as required by law. 4D acknowledges that this Agreement does not in any manner grant 4D the right to use or further disclose PHI in a manner that would otherwise violate the requirements of HIPAA, or any other law.

  7.2. As an independent contractor, 4D acknowledges and agrees that in the performance of the Agreement it may have access to confidential, sensitive, proprietary, or trade secret information owned or disclosed by Client (the "Confidential Information").

  7.3. 4D agrees that it will not, at any time or in any manner, either directly or indirectly, use for the personal benefit of 4D, or for the benefit of any person or entity other than Client, divulge, disclose, or communicate in any manner any information that is proprietary to Client or that is considered by Client to be Confidential Information. 4D will undertake diligent efforts and measures to protect the Confidential Information.

  7.4. 4D acknowledges that Confidential Information includes, but is not limited to, Client's financial data, Client lists, Client's contact information, credit card information, potential Clients lists, Clients' financial data, any items or information that would be considered the work product of accountants and attorneys for Client, and any personal information of Client's customers that was developed by Client as part of the work done for Client, and any other information that Client designates or maintains as confidential, and any other proprietary information of Client that is considered by Client to be confidential information.

  7.5. 4D agrees that neither 4D, nor any of its agents or representatives, will use any of the Confidential Information, directly or indirectly, for competitive purposes or for any purpose whatsoever other than to provide Services under the Agreement, unless expressly authorized in writing by Client.

  7.6. 4D agrees not to transfer originals, hard copies or electronic copies or other reproductions in any format of any Confidential Information to any third party for any reason whatsoever without the prior written consent of Client, unless such third party is an agent or

representative of 4D or is expressly authorized by Client to receive such information, or such transfer is required to perform the Services.

7.7. 4D agrees to return to Client, upon termination of this Agreement or upon Client's demand, and at 4D's sole cost and expense, all Confidential Information in physical form and electronic form, including any copies and reproductions, furnished by Client or obtained by 4D in any manner.

7.8. 4D understands and agrees that the restrictions set forth herein are reasonable and necessary, and that any violation hereof could result in substantial and irreparable damage to Client, and that Client may not have an adequate remedy at law with respect to any such violation. Accordingly, Client and 4D agree that, in the event of any actual or threatened violation hereof, Client has the right and privilege to obtain, in addition to any other remedies that may be available, equitable relief, including temporary and permanent injunctive relief, to cease or prevent any actual or threatened violation of any provision hereof, without posting any bond or other security for such relief.

7.9. Nothing in this Agreement will require 4D to surrender confidential information that 4D owned and developed prior to the Effective Date.

7.10 Client acknowledges that in the course of performance of the Services, Client may learn, obtain, or possess 4D's confidential, sensitive, proprietary, or trade secret information ("4D's Confidential Information"). Client agrees to undertake diligent efforts and measures to protect 4D's Confidential Information, and will not divulge, disclose, or communicate in any manner 4D's Confidential Information, and similarly, any information that is proprietary to 4D or that is considered by 4D to be Confidential Information. Client agrees to maintain confidential 4D's business and operations processes, software, human resources, and technical systems. Client further agrees to maintain confidential 4D's fees, rates, prices, pricing models and price schedules, and all information contained in Exhibits attached to, or referenced in this Agreement.

**8.** **Non-Recruitment of Employees.**

8.1. 4D covenants to refrain, from the Effective Date, and until two (2) years following the Termination Date, from directly or indirectly, or by assisting others, or as principal or agent, entity, employee, independent contractor, stockholder, partner, member, director, officer, manager or in any other capacity whatsoever, solicit, recruit or hire, or attempt to solicit, recruit or hire, any employee or agent of Client, or induce or attempt to induce any employee of Client to terminate his or her employment with Client.

8.2. Client covenants to refrain, from the Effective Date, and until two (2) years following the Termination Date, from directly or indirectly, or by assisting others, or as principal or agent, entity, employee, independent contractor, stockholder, partner, member, director, officer, manager or in any other capacity whatsoever, solicit, recruit or hire, or attempt to solicit, recruit or hire, any employee or agent of 4D, or induce or attempt to induce any employee of 4D to terminate his or her employment with 4D.

**9.** **Representations and Warranties.**

4D represents and warrants that:

9.1. The Agreement, and 4D's performance of the Services, will not violate any agreement or obligation between 4D and any third party that arose prior to the Effective Date, or as of the Effective Date.

9.2. All Services performed by 4D in connection with the Agreement will be performed consistent with, and in full compliance with the laws of the United States, and the States, market(s) and territory(s) in which 4D is active or present.

9.3. 4D hereby represents and warrants that it possesses in good standing all necessary permits and licenses required by law and regulation to perform the Services in each and every municipality, county, state, territory, and market in which 4D will conduct Services for Client.

**10. Indemnity.**

10.1. Client will indemnify, defend, and hold harmless 4D, its employees, shareholders, directors, officers, members, principals, representatives and agents from and against all claims asserted by any person or entity arising from or related to: (a) any products, materials and/or services or any part thereof provided by Client to 4D that infringe upon or violate any patent, copyright, trademark, trade secret or any other proprietary right of any person, and (b) any act or omission of Client or any party under the direction or control of Client in connection with this Agreement regardless of whether Client contributed to such claim.

10.2. In the event that 4D is caused to appear, defend or otherwise incur legal costs and attorneys' fees in connection with acts and omissions of Client, including under circumstances set forth in Paragraph 10.1, or ordered or caused to pay a judgment or award in connection with Client's acts and omissions, Client agrees to reimburse 4D for any such legal costs and attorneys' fees incurred, and judgment or award issued.

**11. Other Endeavors.**

11.1. 4D is free to provide services to others and engage in other business ventures; provided, however, 4D will not engage in services or activities in violation or in conflict with the Agreement or with 4D's duties or obligations under the Agreement.

**12. Termination.**

12.1. Each party may terminate this Agreement at any time with or without cause, by giving the other party ninety (90) days prior written notice, of such termination. The date upon which the Agreement ceases to be in effect is referred to as the Termination Date. Written notice to 4D Global will be sent via email to the following address: **cs@4dglobalinc.net.**

12.2. Notwithstanding Paragraph 12.1, Client and 4D may each immediately terminate the Agreement with written notice to the other in the event of a material breach. Such written notice must (a) specify the material breach, and (b) specify the Termination Date. In the absence of a

specified Termination Date, the Termination Date is deemed to be five (5) business days after dispatch of the written notice.

12.3. After the Termination Date, except in the event of termination arising under Paragraph 12.2, Client will continue to pay 4D for Services satisfactorily performed prior to and as of the Termination Date for the remaining billing cycles as set forth in Exhibit B.

12.4. As of the Termination Date, Client will not have any further obligations under this Agreement whatsoever, except to pay fees owing and already earned pursuant to Exhibit B. 4D will not be required to provide any further Services under this Agreement. Notwithstanding termination of the Agreement, the rights and obligations set forth in Paragraphs 5, 7, 8, and 10 in the Agreement survive termination of the Agreement and remain valid and enforceable.

**13.   Binding Agreement.**

13.1. This Agreement is binding on and will inure to the benefit of Client and 4D and any of their successors, whether by assignment, merger, consolidation, acquisition, sale of assets as a going concern, or otherwise.

**14.   Notices.**

14.1. All notices or other written communications under this Agreement will be in writing and will be deemed duly given if delivered in person or mailed by registered or certified mail, return receipt requested, to the following addresses or to such other addresses as specified in writing from time to time by the parties:

   To 4D:          4D Global, LLC
                   c/o Chanie Gluck, CEO
                   7047 E. Greenway Pkwy Suite, 250
                   Scottsdale, Arizona 85254

   To Client:      186-06 Union Turnpike
                   Fresh Meadows, NY 11366

14.2. For purposes of Paragraph 14.1, written notice is not deemed delivered or received by mail unless dispatched by mail in certified form, return receipt requested, to the addresses listed herein.

**15.   Assignment.**

15.1. The Agreement is personal to 4D, and its subsidiaries and agents, and may not be assigned by 4D or by operation of law to any other person or persons, entity, firm or corporation without the express prior written approval of Client.

15.2. Any purported assignment without prior written approval of Client is null and void.

**16.   Subcontracts.**

16.1. 4D is free to subcontract duties, rights or obligations to be performed under the Agreement with notification to Client.

16.2. All provisions of the Agreement apply to subcontractors with the same force and effect as they apply to 4D. No subcontracting of any of the duties, rights or obligations under this Agreement will release 4D from any of its obligations under the Agreement.

**17.** **Choice of Law, Jurisdiction & Venue.**

17.1 Any controversy, dispute, or claim arising out of or relating to the Agreement, or the breach thereof, or issues relating to enforcement, performance, discharge, lack of performance and formation of this Agreement will be governed by, and construed and enforced in accordance with, the law of the State of Arizona, regardless of any applicable conflict-of-law rules to the contrary. Any controversy, dispute, or claim arising under this Agreement will be submitted to the exclusive jurisdiction of State or Federal courts in Maricopa County, Arizona, with venue in Phoenix, Arizona.

**18.** **Severability.**

18.1. If any of the provisions of this Agreement are held or found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

**19.** **Attorneys' Fees and Costs.**

19.1. In the event of any legal action to enforce the provisions of this Agreement or obtain any legal or equitable relief related in any manner to this Agreement, the prevailing party will be awarded that party's reasonable attorneys' fees and costs pursuant to contract, and A.R.S. §§ 12-341 and 12-341.01.

**20.** **Failure to Enforce Is Not Waiver.**

20.1. Any failure or delay on the part of a party to exercise any remedy or right under this Agreement will not operate as a waiver. The failure of a party to require performance of any of the terms, covenants, or provisions of this Agreement will not constitute a waiver of any of the rights under the Agreement. No covenant or condition of this Agreement may be waived except by the written consent of the waiving party. Any such written waiver of any term of this Agreement will be effective only in the specific instance and for the specific purpose given.

**21.** **Arm's Length Negotiations.**

21.1. Each party to this Agreement expressly represents and warrants that (a) before executing this Agreement, it has fully informed itself of the terms, contents, conditions and effects of this Agreement and the transactions contemplated hereby; (b) it has relied solely and completely upon its own judgment in executing this Agreement; (c) it has acted voluntarily and of its own free will in executing this Agreement; (d) it is not acting under duress, whether economic or otherwise, in executing this Agreement; (e) this Agreement is the result of arm's length negotiations conducted by and between the parties, and (f) it has had the opportunity to seek and has obtained the advice of independent counsel before executing this Agreement.

**22.** **Interpretation.**

22.1.   The parties hereto acknowledge and agree that each party has participated in the preparation of this Agreement, and that no inference in favor of, or against any party will be drawn from the fact that one party has drafted any portion hereof.

**23.** **Titles and Headings.**

23.1.   The titles or headings of paragraphs and subparagraphs contained in this Agreement are for convenience only, and they neither form a part of this Agreement nor are they to be used in the construction or interpretation hereof.

**24.** **Counterparts.**

24.1.   This Agreement may be executed in any number of counterparts, each of which will be deemed an original as against any party whose signature appears thereon, and all of which together constitute one and the same instrument. This Agreement is binding when one or more counterparts hereof, individually or taken together, bear the signatures of all of the parties whose names appear below.

**25.** **Modification.**

25.1.   This Agreement cannot be amended, modified, or altered in any manner except in writing signed by the parties. Changes to the Exhibits hereto may be amended as provided herein. The parties agree that neither will rely upon any rule that enforces an oral modification of a contract when supported by consideration.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

**KAMIN HEALTH:**

By: *Yitz Kaminetzky*

Print Name: Yitz Kaminetzky

Title: Practice Manager

**4D GLOBAL, LLC**:

By: *Chanie Gluck*

Chanie Gluck

CEO

# EXHIBIT A

## SERVICES

4D can perform the following services for the benefit of Client:

I.  SERVICES:

Data Entry Services: (DE) posting charges, entering demographic information, posting payments, adjustments (with instructions).

Accounts Receivable Services: (AR) calling insurance companies for status on unpaid claims, obtaining claim status from insurance company websites with provided access. Communicating with client and developing a policy and procedure for handling unpaid claims and actions to resolve specific dispositions (reasons for denials).

Coding: CPT and ICD-10 Coding

Verification of Benefits: Full time employee dedicated to verifying benefits for all patients.

Initial: _YK_      Initial: _LG_
Kamin Health          4D Global, LLC

## EXHIBIT B

## CONSIDERATION

I. <u>FEES</u>:

    Client agrees to pay 4D, and 4D hereby agrees to receive from Client for performance of the Services described in the Agreement and listed on <u>Exhibit A</u> to this Agreement in accordance with the terms and conditions of this Agreement as follows:

A.     $1,375 per Full Time Employee Data Entry per month
B.     $1,675 per Full Time Accounts Receivable Employee per month
C.     $1,775 per Full Time Verification of Benefits / Credentialing Employee per month
D.     $1,975 per Full Time Junior Coder per month
E.     $2,375 per Full Time Experienced Coder per month
F.     $1,695 per Team Lead (optional once you reach 5 FTE's)
G.     $2,195 per Analyst (required once you reach 10 FTE's)

II. <u>PAYMENT TERMS</u>:

    Other than the first invoice delivered to Client, fees are payable to 4D 30 days in advance of each month during which the Services will be performed. Fees are payable to 4D or before the tenth (10) day of every month. Client has the option to pay by ACH, or by Credit Card. Credit card payments will be subject to additional fees.

Initial: _Yk_                    Initial: _LG_
Kamin Health                   4D Global, LLC